[No. B168847. Second Dist., Div. Seven. Feb. 8, 2005.]

DAVID B. SCHACHTER, Plaintiff and Appellant, v. CITIGROUP, INC. et al. Defendants and Respondents.

## Counsel

Law Offices of Ashley D. Posner, Ashley D. Posner and Barbara Brudno for Plaintiff and Appellant.

Skadden, Arps, Slate, Meagher & Flom, Raoul D. Kennedy, David Pattiz, Douglas B. Adler and Seth M. Schwartz for Defendants and Respondents.

## Opinion

**ZELON, J.**—In this class action, a stockbroker challenges his former employer's stock purchase plan, which used tax-deferred compensation to purchase restricted company stock for participating employees. If the employee resigned before the stock's vesting period, both the unvested shares and the deferred compensation applied toward their purchase were forfeited. Plaintiff contends the forfeiture provision violates the requirement to pay

wages upon resignation (Lab. Code, §§ 201–202), and constitutes conversion and unfair business practices (Bus. & Prof. Code, § 17200 et seq.).

Early in the litigation, the trial court denied defendants' motion for summary judgment. Four years later, with no newly discovered facts, new circumstances, or any change in the law, defendants renewed their motion before a new trial judge. The court granted the motion under its inherent power to reconsider its own rulings sua sponte. We find the second motion was barred by Code of Civil Procedure section[1] 437c, subdivision (f)(2) (§ 437c(f)(2)), which requires a party moving for a second summary judgment motion to establish "newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion." We conclude the trial court thus improperly reconsidered defendant's renewed summary judgment and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *FACTS*

The following facts are undisputed. Plaintiff and appellant David B. Schachter was formerly employed as a financial consultant by defendant and respondent Salomon Smith Barney, Inc. (SSB), a subsidiary of defendant and respondent Citigroup, Inc. (formerly Travelers Group, Inc.) (collectively defendants).

SSB offered its financial consultants the opportunity to participate in the Capital Accumulation Plan (the Plan), whereby employees made annual elections to apply 5 to 25 percent of their deferred compensation at six- or 12-month intervals for the purchase of restricted shares of Citicorp stock, which were discounted at a rate of 25 percent. The restricted shares vested after two or more years of employment. However, if the employee voluntarily terminated employment or was involuntarily terminated for cause during that two-year period, both the unvested shares of restricted stock and the deferred compensation applied toward their purchase were forfeited, and the employee would retain only restricted shares that had vested.[2] Schachter elected to

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] The purpose of the Plan was "to attract, retain and motivate officers and other key employees." Thus, the forfeiture provision did not apply equally to employees who terminated their employment due to death, disability, involuntary termination without cause, or retirement. Termination of employment under those other conditions resulted in immediate vesting, full or partial cash payment without interest on the annual compensation that had been applied toward the forfeited restricted stock, or issuance of restricted stock upon completion of the vesting period.

participate in the Plan in 1995 for 12 months and in 1996 for six months. In March 1996, he voluntarily terminated his employment with SSB. As a result, Schachter forfeited both the unvested shares of restricted stock and the deferred compensation applied toward their purchase.

## B. *PROCEDURE*

On May 22, 1998, on behalf of himself and all others similarly situated, Schachter filed his initial complaint alleging: (1) violation of Labor Code section 200 et seq.; (2) violation of Labor Code section 400 et seq.; (3) conversion; and (4) violation of the unfair business practices act (Bus. & Prof. Code, § 17200 et seq.).

Schachter amended his complaint three times. His third amended complaint, filed February 27, 2002, retained three of the four original causes of action with minor modifications: (1) violation of Labor Code sections 201–202; (2) conversion; and (3) violation of the unfair business practices act (Bus. & Prof. Code, § 17200 et seq.).

On March 29, 2002, Defendants cross-complained for recoupment and rescission.

### 1. *Defendants' First Motion for Summary Judgment*

On October 16, 1998, defendants moved for summary judgment or, in the alternative, summary adjudication. On July 13, 1999, Judge Aurelio Munoz issued the following tentative order:

"The motions are both denied.[3] The nature of the policy in this case is such that it is either all good or all bad. Unfortunately, the deduction and subsequent loss of the employee[']s contribution, should the employee leave the employment before the passage of two years, means that the employee is forfeiting part of his pay. *Ware* [v.] *Merrill Lynch, Pierce, Fenner & Smith,* [*Inc.*] (1972) 24 [Cal.App.]3d 35, 44 [100 Cal.Rptr. 791]. Were this a bonus plan where the bonus was not earned until a certain date or condition was met, then there would be no problem because the bonus is not earned until the passage of a certain period of time. See *Lucian* [v.] *All States Trucking* [*Co.*] (1981) 116 [Cal.App.]3d 972 [171 Cal.Rptr. 262]. Here, however, the employee is paid the wages and then gives the money back to the employer subject to forfeiture should he or she leave before the passage of two years.

---

[3] Judge Munoz's use of the plural, "motions," was in reference to defendants' motion for summary judgment or, in the alternative, summary adjudication.

This amounts to a rebate to the employer in violation of Labor Code [section] 224 since the employee is getting nothing back in return. See also *Phillips [v. Gemini] Moving Specialists* (1998) 63 [Cal.App.]4th 563, 572 [74 Cal.Rptr.2d 29][,] fn. 3."

Court and counsel discussed at length the facts and law pursuant to defendants' motion for summary judgment, essentially the same issues that were later renewed in defendants' subsequent motion.

Following the hearing, the court ordered the parties to prepare a final order, but the parties failed to agree on mutually acceptable language despite the passage of 15 months. In October 2000, Judge Munoz adopted the tentative ruling as the court's final order.

### 2. *Defendants' Second Motion for Summary Judgment*

On November 8, 2002, defendants renewed their motion for summary judgment, raising essentially the same issues as the first motion. This time, defendants relied on a nonprecedential trial court decision by Judge Carolyn B. Kuhl in *Blum v. Prudential Securities, Inc.* (Super. Ct., L.A. County, 2002, No. BC250046), which granted summary judgment for another employer on its tax deferred stock purchase plan that had a similar forfeiture provision. Defendants asked the court to reconsider its prior ruling sua sponte in light of *Blum.*

At the April 18, 2003 hearing on the motion, newly assigned Judge Victoria Chaney announced: "The tentative is to deny, and the reason is that, well, basically, this had been apparently decided by Judge Munoz before I got the case. [¶] It isn't a true motion to reconsider—I'm following the rules of [section] 1008 of the Code of Civil Procedure. Judge Kuhl's opinion, although interesting, is not precedent, it's not binding on me, and it has no effect in this case. And it doesn't really matter whether I agree or disagree with Judge Munoz, the reality is, he made a ruling and we're all going to be living with it."

However, Judge Chaney deferred issuing a final ruling on the motion until both parties submitted briefing concerning the propriety of a limited trial on a discrete issue. In the same hearing, Judge Chaney requested Schachter's counsel "to agree to let [the court] reconsider the [section 437c] motion that we have here now, reconsider it anew . . . ." Schachter's counsel objected to reconsideration of the summary judgment motion on the grounds it was barred by section 437c(f)(2) and triable issues of material fact precluded summary judgment.

.

At the May 19, 2003 case management/status conference, defendants once more asked Judge Chaney to reconsider Judge Munoz's order denying their first motion for summary judgment. The following colloquy took place:

"THE COURT: . . . If I reconsidered that, where does that get us? And let's say I granted your motion.

"MR. KENNEDY [defense counsel]: I think that would terminate the case, Your Honor.

"THE COURT: The whole case?

"MR. KENNEDY: Yes, Your Honor."

The court permitted the parties to argue defendants' motion and took the matter under submission.

On June 17, 2003, the court granted summary judgment for defendants under its inherent power to reconsider its own rulings sua sponte. Finding no triable issues of material fact, Judge Chaney held all three causes of action in Schachter's third amended complaint failed as a matter of law. Schachter timely appealed from the judgment.

## DISCUSSION

### A. *STANDARD OF REVIEW*

■ The appeal presents two sets of questions: 1) whether consideration of defendant's renewed summary judgment motion was appropriate in light of section 437c(f)(2); and 2) if so, whether the court erred in granting it because of procedural or legal errors, or disputed issues of material fact. On the section 437c(f)(2) question, we apply the abuse of discretion standard of review. (*Pender v. Radin* (1994) 23 Cal.App.4th 1807, 1812 [29 Cal.Rptr.2d 36].) On the grant of summary judgment, the appropriate standard of review is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854–855 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

### B. *DEFENDANTS WERE BARRED FROM RENEWING THEIR SUMMARY JUDGMENT BECAUSE THEY FAILED TO COMPLY WITH SECTION 437c(f)(2)*

1. *Section 437c(f)(2) Limits a Party's Ability to Renew a Motion for Summary Judgment*

Schachter contends the renewal of defendants' motion for summary judgment contravenes section 437c(f)(2).

Section 437c(f)(2) provides: "a party may not move for summary judgment based on issues asserted in a prior motion for summary adjudication and denied by the court, unless that party establishes to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion."

■ In *Bagley v. TRW, Inc.* (1999) 73 Cal.App.4th 1092 [86 Cal.Rptr.2d 909] (*Bagley*), the trial court had earlier denied the defendant's motion for summary judgment, summarily adjudicated 27 of the issues in favor of the defendant, and denied the remaining 103 requests for summary adjudication. Later, relying on the same facts and the same law, the defendant made a second motion for summary judgment or, in the alternative, summary adjudication of each of the plaintiff's seven causes of action. The second motion was heard by a different judge, who granted summary judgment. On appeal, Division One of this District reversed and remanded. The *Bagley* court held a second summary judgment motion is barred where it offers "no 'newly discovered facts or circumstances,' " does not suggest that " 'a change of law' " had occurred, and does not request the judge to "make a finding" concerning these statutory requirements. (*Id.* at pp. 1093, 1096.)

■ As to a court's inherent authority to reconsider its prior orders, the *Bagley* court explained: "In light of the specific language of subdivision (f)(2) of section 437c, we summarily reject TRW's suggestion that a trial court always has the 'inherent' authority to reconsider its own rulings. Leaving to one side the fact that this is a case in which one judge was asked to reconsider another judge's ruling [citation], a court does not have the inherent power to act in a manner that is prohibited by statute." (*Bagley, supra,* 73 Cal.App.4th at p. 1097, fn. 5.)[4]

---

[4] The question of whether section 437c(f)(2) expressly deprives a trial court of jurisdiction to hear a second summary judgment motion that does not comply with its requirements is currently before the Supreme Court. (See *Le Francois v. Goel* (Cal.App.), review granted Sept. 15, 2004, S126630.) *Le Francois* presents the following issue: "Does a trial court have the inherent power to rule on a second motion for summary judgment or, in the alternative, for summary adjudication, even though the second motion did not meet the requirements of Code of Civil Procedure section 1008, subdivision (a), relating to applications for reconsideration, or the requirements of Code of Civil Procedure section 437c, subdivision (f)(2), relating to motions for summary judgment following an unsuccessful motion for summary judgment."

### 2. *Section 1008 Permits a Trial Court to Sua Sponte Reconsider a Prior Order Under Specified Conditions*

Relying on section 1008 case authority, defendants contend that the trial court has the inherent power to sua sponte reconsider its interim orders, including summary judgment and summary adjudication, even if the elements of section 437c(f)(2) are not satisfied.

Section 1008, the general statute governing motions for reconsideration, allows the trial court to reconsider and modify, amend, or revoke its prior order when the moving party shows a different state of facts exists, or when the court determines that there has been a change of law that warrants reconsideration on its own motion.[5] Like section 437c(f)(2), "[s]ection 1008 is designed to conserve the court's resources by constraining litigants who would attempt to bring the same motion over and over." (*Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1157 [89 Cal.Rptr.2d 676] (*Darling, Hall & Rae*).)

---

[5] Section 1008 provides: "(a) When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order. The party making the application shall state by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown. [¶] (b) A party who originally made an application for an order which was refused in whole or part, or granted conditionally or on terms, may make a subsequent application for the same order upon new or different facts, circumstances, or law, in which case it shall be shown by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown. For a failure to comply with this subdivision, any order made on a subsequent application may be revoked or set aside on ex parte motion. [¶] (c) If a court at any time determines that there has been a change of law that warrants it to reconsider a prior order it entered, it may do so on its own motion and enter a different order. [¶] (d) A violation of this section may be punished as a contempt and with sanctions as allowed by Section 128.7. In addition, an order made contrary to this section may be revoked by the judge or commissioner who made it, or vacated by a judge of the court in which the action or proceeding is pending. [¶] (e) This section specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions, and applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final. No application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section. [¶] (f) For the purposes of this section, an alleged new or different law shall not include a later enacted statute without a retroactive application. [¶] (g) This section applies to all applications for interim orders."

The prevailing authority has found the jurisdictional limitation of section 1008, subdivision (e), to be an impermissible interference with the core functions of the judiciary. (*Scott Co. v. United States Fidelity & Guaranty Ins. Co.* (2003) 107 Cal.App.4th 197, 207 [132 Cal.Rptr.2d 89]; see also *Remsen v. Lavacot* (2001) 87 Cal.App.4th 421, 426–427 [104 Cal.Rptr.2d 612] [order granting interest to beneficiaries of trust properly modified]; *Kollander Construction, Inc. v. Superior Court* (2002) 98 Cal.App.4th 304, 311–314 [119 Cal.Rptr.2d 614] [agreeing with *Remsen* but finding satisfaction of section 1008 requirements in any event]; accord *Blake v. Ecker* (2001) 93 Cal.App.4th 728, 739, fn. 10 [113 Cal.Rptr.2d 422] [inherent power to reconsider exists even after end of 10-day period to bring motion]; *Wozniak v. Lucutz* (2002) 102 Cal.App.4th 1031, 1042 [126 Cal.Rptr.2d 310] [irrelevant whether the court acts sua sponte or pursuant to a party's motion ].) These courts hold that a trial court has the inherent power under the California Constitution to reconsider an interim ruling, a power that is "neither confined by nor dependent on statute." (*Kollander Construction, Inc. v. Superior Court, supra,* 98 Cal.App.4th at p. 311; accord, *Scott Co. v. United States Fidelity & Guaranty Ins. Co., supra,* 107 Cal.App.4th at p. 207 [jurisdictional limitation of section 1008, subdivision (e) constitutes an impermissible interference with the core functions of the judiciary].)

■ This District has supported the view that a court has the jurisdiction to reconsider its earlier decisions. It has, in appropriate cases, focused on the delineation between sua sponte action by the court and actions by the parties that fall under an express legislative determination. (See *Darling, Hall & Rae, supra,* 75 Cal.App.4th 1148 [this court held section 1008 does not govern the trial court's ability, on its own motion, to reevaluate its own interim rulings]; *Case v. Lazben Financial Co.* (2002) 99 Cal.App.4th 172 [121 Cal.Rptr.2d 405] [Division Three of this District held section 1008 restricts only litigants' motions, not court's sua sponte reconsideration of its own orders]; *Bernstein v. Consolidated American Ins. Co.* (1995) 37 Cal.App.4th 763, 774 [43 Cal.Rptr.2d 817], disapproved on another ground in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 841, fn. 13 [88 Cal.Rptr.2d 366, 982 P.2d 229] [Division One of this District held that, upon request for clarification, correction of prior ruling denying summary adjudication permissible on court's own motion]; *Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368 [130 Cal.Rptr.2d 754] [Division Three of this District held section 1008 was jurisdictional and controlling only when a party has renewed a motion or requested reconsideration, not when the trial court reconsiders its ruling sua sponte]; *Abassi v. Welke* (2004) 118 Cal.App.4th 1353 [14 Cal.Rptr.3d 336] [Division Three of this District held the trial court

may sua sponte invite a second summary judgment motion following its denial of a previous summary judgment motion notwithstanding section 1008].)

Indeed, in *Darling, Hall & Rae*, we found the line of cases holding section 1008 jurisdictional to be inapplicable, because subdivision (a) of section 1008 applies only to applications made to the court by parties, not only by its very terms, but also because the intent of the Legislature was "to conserve the court's resources by constraining litigants who would attempt to bring the same motion over and over." (*Darling, Hall & Rae, supra,* 75 Cal.App.4th at p. 1157.) There, the trial court, after denying the plaintiffs' motions for summary judgment, reconsidered the motions sua sponte and granted summary judgment for plaintiffs. (*Id.* at p. 1156.) Upholding the court's ability to reevaluate its own interim rulings sua sponte, we explained that the statute does not restrict reconsiderations, because "these same judicial resources would be wasted if the court could not, on its own motion, review and change its interim rulings." (*Id.* at p. 1157.) The only requirement is that the trial court exercise due consideration before modifying, amending, or revoking its prior orders. The trial court did so in *Darling, Hall & Rae* by reviewing the papers and carefully reflecting on its prior rulings. (*Ibid.*)

Similarly, in *Abassi v. Welke, supra,* 118 Cal.App.4th at p. 1358, the trial court denied the defendant's first motion for summary judgment but granted his second motion for summary judgment. There, two years after the defendant's first motion for summary judgment had been denied, and after many of the issues had been resolved, a status conference was held. During this conference, the parties discussed the most efficient manner to proceed. The trial court expressly invited the defendant to file a second summary judgment motion because it wanted to reassess its prior ruling. The parties had an opportunity to brief the issue, and a hearing was held. (*Id.* at p. 1360.) Thus, due consideration was given and Division Three of this District affirmed the hearing of this invited motion. (*Id.* at pp. 1360–1361.) However, because the motion was based entirely on section 1008, the *Abassi* court did not address the distinction between an invited and uninvited motion or the prohibition against the parties under section 437c(f)(2). (*Abassi,* at p. 1360, fn. 7.)

3. *The Court's Inherent Authority to Reconsider Its Prior Orders Does Not Excuse a Party From Satisfying the Requirements of Section 437c(f)(2) in Renewing a Summary Judgment Motion*

"In matters of statutory construction, we may not ignore restrictions the Legislature has inserted. (§ 1858.)" (*Woods v. Young* (1991) 53 Cal.3d

315, 326 [279 Cal.Rptr. 613, 807 P.2d 455].) "A specific provision relating to a particular subject will govern a general provision, even though the general provision standing alone would be broad enough to include the subject to which the specific provision relates." (*People v. Tanner* (1979) 24 Cal.3d 514, 521 [156 Cal.Rptr. 450, 596 P.2d 328].) Section 437c(f)(2) prohibits "a party" from moving for summary judgment based on issues asserted in a prior motion for summary adjudication and denied by the court, unless that party establishes to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted. Section 1008, in contrast, attempted to directly limit "the court's jurisdiction" with regard to general applications for reconsideration of its orders and renewals of previous motions. (§ 1008, subd. (e).) Therefore, section 437c(f)(2), not the provisions of section 1008, governs where the motion is for summary judgment.

The *Bagley* court explained that "[q]uite clearly, this case must be decided by the specific requirements of the summary judgment statute, not the general provisions of the reconsideration statute. [Citation.] This is particularly true where, as here, the prohibition against repeated summary judgment motions was added to make the summary judgment process more efficient and to reduce the opportunities for abuses of the procedure (Sen. Rules Com., Off. of Sen. Floor Analyses, rev. of Sen. Bill No. 2594 (Aug. 23, 1990)) which the addition of subdivision (f)(2) accomplished by overruling the cases that had held that an order denying a motion for summary judgment did not preclude a renewal of the same motion at any time before trial. [Citations.]" (*Bagley, supra,* 73 Cal.App.4th at p. 1096, fn. 3.)

Here, nearly four years after Judge Munoz denied defendants' summary judgment motion, defendants renewed their motion "based on issues asserted in a prior motion for summary adjudication and denied by the court" with no "newly discovered facts or circumstances or a change of law supporting the issues reasserted." (§ 437c(f)(2).) Like the *Bagley* court, we have also evaluated the evidence submitted with defendants' first and second motions, and found that while they are "cosmetically repackaged," the motions are essentially "identical." (*Bagley, supra,* 73 Cal.App.4th at p. 1096.) As in *Bagley,* the causes of action were nearly identical between the original and operative third amended complaints. That Schachter had filed a third amended complaint and reorganized four causes of action into three does not create "new circumstances" within the meaning of section 437c(f)(2). The only new California authority defendants cited was a nonpublished superior court case: *Blum v. Prudential Securities, Inc.* (Super. Ct., L.A. County, 2002, No. BC250046). However, as defendants concede, "a written trial court ruling has no precedential value." (*Santa Ana Hospital Medical Center v. Belshe* (1997) 56 Cal.App.4th 819, 831 [65 Cal.Rptr.2d 754].) Thus, there was no "change of law" under the meaning of section 437c(f)(2). The court

recognized this; upon granting the renewed motion, Judge Chaney did not make the findings necessary to permit the renewed motion.

■ We continue to believe that, as a general matter, " '[T]he court's inherent power to correct its own rulings is based on the California Constitution and cannot be impaired by statute.' [Citation.] Moreover it is irrelevant whether the court acts sua sponte or pursuant to a party's motion: " 'We find this to be a distinction without a difference. Whether the trial judge has an unprovoked flash of understanding in the middle of the night or is prompted to rethink an issue by the stimulus of a motion is "constitutionally immaterial" to the limitation on the power of the Legislature to regulate the judiciary.' [Citation.] In either case, the ability of the trial court to correct what it perceives to be an incorrect interim ruling can only further the policy of conserving judicial resources." (*Wozniak v. Lucutz* (2002) 102 Cal.App.4th 1031, 1042 [126 Cal.Rptr.2d 310].)

■ However, the Legislature enacted a specific limitation on the parties out of a concern for abuse of the summary adjudication process, and the burden such motions can impose on a party's resources. The Legislature did not, however, attempt to limit the court's sua sponte authority. Thus, for example, were a party to suggest that the court reconsider a motion, the court would have every right to do so, even if that required the party to bring a new motion. In that circumstance, the responding party would not bear the burden of preparing opposition unless the court indicated an interest in reconsideration.

That did not happen here. Unlike *Abassi v. Welke*, the defendants did not file their renewed motion based on a request from the court, but instead used their motion to request the court to act "sua sponte." The only briefing the court requested related to discrete issues concerning the propriety of a limited trial. Nonetheless, the court later permitted argument on defendants' identical motion for summary judgment at a case management/status conference.

■ The defendants, as parties to the case, were expressly bound by the requirements of section 437c(f)(2). Their motion, however, violated that provision because it failed to establish newly discovered facts or circumstances or a change of law. They are, therefore, barred from renewing their summary judgment motion. Accordingly, the trial court erred in considering defendants' second motion for summary judgment.[6]

---

[6] Because we determined defendant's renewed summary judgment motion was not appropriate in light of section 437c(f)(2), we need not reach the merits of the motion.

## DISPOSITION

The trial court's judgment is reversed. Plaintiff is awarded his costs on appeal.

Perluss, P. J., and Woods, J., concurred.

Respondents' petition for review by the Supreme Court was denied June 9, 2005. Kennard, J., was of the opinion that the petition should be granted.