Filed 11/24/14  Colonial Pacific Leasing v. Kazi CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| COLONIAL PACIFIC LEASING CORPORATION et al., | B248862 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC448587) |
| v. | |
| KHATIJA KAZI, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle R. Rosenblatt, Judge.  Affirmed.

Gareeb Law Group, Alexander S. Gareeb, Fadi K. Rasheed; and Richard A. Kraslow for Defendant and Appellant.

Reed Smith, Farah Tabibkhoei and Alexander Terras for Plaintiffs and Respondents.

————————————

Defendant Khatija Kazi appeals summary judgment in favor of plaintiffs Colonial Pacific Leasing Corporation, GE Capital Commercial, Inc., and General Electric Capital Business Asset Funding Corporation of Connecticut in the amount of $9.9 million on four loan guarantees defendant gave plaintiffs. She contends the trial court erred in granting summary judgment on a renewed motion; plaintiffs failed to establish factual issues as to two causes of action; and her evidentiary objections should have been sustained. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### 1. *The Loans and Defendant's Default*

Defendant and her husband Zubair Kazi[1] (Zubair) are 50/50 owners of Kazi Foods of New York, Inc. (KNY), Kazi Foods of Michigan, Inc. (KMI), Kazi Foods of Florida, Inc. (KFL), Kazi Foods of Annapolis, Inc. (KMD), Kazi Foods of Louisiana, Inc. (KLA), Kazi Family, LLC (Kazi Family) and Kazi Foods of Hawaii, Inc. (KHI). These companies comprise the second-largest franchisees in the Kentucky Fried Chicken (KFC) system. These companies operate more than 250 restaurants, employ more than 3,000 persons, and generate annual revenues of over $170 million.

#### (a) The Florida Notes

In 1999, defendant and Zubair borrowed $8 million from plaintiff GE Capital Commercial, Inc. (GE Capital)[2] evidenced by three promissory notes. In 2004, KFL refinanced this existing debt as evidenced by four notes for $4.954 million, $850,000, $250,000, and $450,000. Defendant and Zubair personally guaranteed repayment of the Florida notes, as well as all expenses of lender in enforcing its rights under the guaranty. Defendant's obligations under the Florida guaranty is limited to 30 percent of the total obligation on the Florida notes.

---

[1] Zubair Kazi is not a party to this action.

[2] Although not material here, GE Capital is the successor in interest to the original lender.

This loan came due in July 2009, and defendant and Zubair did not make the balloon payment due of $1,536,206.29. By letter dated November 24, 2009, plaintiffs provided notice of an event of default, and stated that all obligations were now due and payable. None of the defaults have been cured. On March 17, 2010, plaintiffs demanded payment on the guaranty.

### (b)     The New York Loan

In 2006, KNY borrowed $33.5 million, guaranteed by defendant and Zubair. The loan is evidenced by eight separate notes in amounts ranging from $3 million to $6.3 million. Defendant's obligations under the New York guaranty is limited to $5.5 million of the New York loan obligation.

By letter dated November 24, 2009, plaintiffs provided notice of an event of default, and stated that all obligations were now due and payable. None of the defaults have been cured. On March 17, 2010, plaintiffs demanded payment on the guaranty.

### (c)     The Michigan Loan

In December 2006 KMI borrowed $29 million, also guaranteed by defendant and Zubair. These loans were evidenced by eight separate notes ranging in value from $2,381,669 to $5.8 million. Defendant's obligations under the guaranty are limited to $4.35 million of the loan obligations.

By letter dated November 24, 2009, plaintiffs provided notice of an event of default, and stated that all obligations were now due and payable. None of the defaults have been cured. On March 17, 2010, plaintiffs demanded payment on the guaranty.

### 2.     *Default and Chapter 11 Bankruptcy*

### (a)     Amounts Due Prebankruptcy

According to plaintiffs, KFL, KNY and KMI continued to make payments on their loans until December 2009, when all companies stopped making payments. Two small payments of $100,000 and $113,043.80 were made in January and March 2010, respectively, that were associated with unsuccessful forbearance negotiations. These were the last payments made.

3

On February, 17, 2011, KFL and KMI filed for chapter 11 bankruptcy proceedings; on March 21, 2011, KNY and KMD filed for chapter 11 bankruptcy proceedings. These companies began making "adequate protection" payments at the behest of the chief restructuring officer (CRO) in the chapter 11 proceedings. The CRO took over restaurant operations and agreed to the entry of a cash collateral order.

According to plaintiffs, as of January 2010, defendant owed a total principal balance of $61,418,390.86, consisting of the following amounts:

1.     $1,536,205,19, the past-due balloon payment owed by defendant and Zubair in July 2009;

2.     $26,143,457.02 due from KMI in November 2009;

3.     $28,714,820.59 due from KNY in January 2010;

4.     $5,023,908.06 due from KFL in January 2010.

According to plaintiffs, interest on these loans continued to accrue at the rate of two percent higher than the state contract rate, as provided in the promissory notes. The stated contract rate pursuant to the promissory notes is a floating rate equal to a stated percentage plus LIBOR.[3]

**(b)     Cash Collateral Order; Sale of Assets**

Plaintiffs' evidence showed that on April 14, 2011, pursuant to a final order authorizing the use of cash collateral (Final Order), the loans were consolidated into one loan that was fully cross-collateralized and cross-defaulted by all of the debtors' other assets.

According to plaintiffs' analysis, a series of payments made through the bankruptcy proceedings reduced the debtors' indebtedness to plaintiffs to $14,106,197.68. First, the debtors made two adequate protection payments of $4,073,575.04 and $2,858,557.65, realized from the sale of several underperforming restaurants and which

---

[3] LIBOR stands for London Interbank Offered Rate, "a benchmark rate that some of world's lending banks charge each other for short-term loans."

were applied to delinquent interest and principal. These payments left $5,385,503.47 in accrued and unpaid interest.

According to plaintiffs' evidence, in addition, on February 28, 2012, the bankruptcy court approved the sale of the debtors' remaining 111 restaurants. The purchase price was $56.22 million, of which $2.85 million was cash and the remaining $52.5 million balance was the assumption of the debtors existing debt to plaintiffs.[4] These terms were set forth in a Credit Agreement dated February 29, 2012.

Plaintiffs asserted that the cash proceeds of this sale were paid to the debtors and used to pay taxes, payroll, trade payables, rent, and closing expenses associated with the sale. Such payments were approved by the bankruptcy court.

Plaintiff's evidence showed that in a settlement agreement and stipulation dated April 12, 2012, the debtors settled claims against Kazi and non-debtor Kazi entities for fraudulent transfer of certain of the debtors' assets to Kazi family entities. Eight of the nine restaurant properties being sold to the third party were owned by Kazi Family, which in turn owed $5.6 million to plaintiffs as a judgment debtor of plaintiffs. On June 30, 2012, the nine escrowed properties were transferred and plaintiffs credited the $6.249 million additional proceeds to judgments against other related parties (including Kazi Family and Zubair). A further $1 million was credited to a related judgment against Zubair on June 30, 2012.

According to plaintiffs, the purchase of the restaurants by a third party paid all interest on the debt assumed, reducing the original principal balance of $61,418,390.86 to a principal balance neither paid nor assumed of $6,059,833.21.

Plaintiffs assert that they accrued out of pocket expenses of $2,660,861 to collect loans. Unpaid interest on the unassumed debt was $5,385,503.47.

---

[4] The purchaser assumed $46.251 million plus an additional $6.249 million if certain escrowed properties were timely conveyed.

5

Plaintiffs contend that as of December 31, 2012, the amounts defendant owed to plaintiffs was $14,106,197.68, and consisted of:

Principal, $6,059,833.21

Unpaid Interest, $5,385,503.47

Fees and Expenses, $2,660,861.00

Total Due: $14,106,197.68

Defendant's guarantee obligations were limited to:

$5.550 million on KNY;

$4.350 million on KMI; and

Thirty percent of KFL's obligations.

Finally, plaintiffs contended that the amounts due on the Maryland loans are limited to the amount due on those notes.

### 3. *The First Summary Judgment Motion*

Plaintiffs' original complaint, filed November 2, 2010, stated three claims for breach of contract based on the Florida loan guarantees, the New York loan guarantees, and the Michigan loan guaranty.

Plaintiffs moved for summary judgment on February 3, 2012, arguing summary judgment on its breach of guaranty claims was proper because they had demonstrated the contracts, defendant's breach, and damages.

In May 2012, the court denied plaintiffs' first summary judgment motion principally on the reasoning that although defendant's liability as loan guarantor had been established, triable issues of fact remained with respect to the amount due. Subsequently, the parties engaged in further discovery and plaintiffs amended their complaint to add a claim for breach of contract based upon the Maryland notes.

### 4. *The Renewed Summary Judgment Motion*

On August 31, 2012, plaintiffs filed a first amended complaint, stating four claims for breach of contract based on the Florida loan guarantees, the New York loan

guarantees, and the Michigan loan guaranty. Plaintiffs added a claim based upon the Maryland loan guaranty.

On January 4, 2013, plaintiffs renewed their summary judgment motion. They argued that defendant was counting payments more than once in calculating the amounts due on the notes, and that the amount due could be established with certainty. Plaintiffs sought $5.55 million on the KNY guarantee and $4.35 million on the KMI guaranty. They also sought $1,536,206.29 plus interest on the unpaid portion of the Maryland notes.

Plaintiffs submitted the declaration of Harold Vinson, the Senior Vice President and General Servicing Manager of GE Capital Franchise Finance Corporation, the servicing agent of plaintiff lenders for the Kazi loans. Vinson had personal charge of the loan accounts for defendant Kazi, and was charged with the maintenance of, in the ordinary course of business, the recording and tracking of all payments and other ongoing transactions in the accounts.

Vinson's declaration attached as exhibits detailed explanations of the amounts due on the loans, showing payments made on each loan monthly through January 2010, as well as allocations of the proceeds of the sales conducted in the bankruptcy proceedings as set forth *ante*.

In opposition, to rebut plaintiffs' factual showing as detailed above, defendant asserted that plaintiffs could not establish their claim of damages, contending she had paid all sums due and pointing to October 2012 deposition testimony that defendant's senior vice president and person most knowledgeable, Harold Vinson, could not say with certainty the amounts owing on the notes. Defendant argued that in spite of the bankruptcy court order, plaintiffs could not treat all of the loans as one.

Defendant also submitted the declaration of Stephen Poludniak, the legal manager of the Kazi entities, and prior to bankruptcy their chief financial officer, asserted that defendant and related Kazi entities had paid over $92 million to plaintiffs. Poludniak asserted that defendant and related Kazi entities had made additional payments as follows:

7

$4,078,670 from April 2011 to February 2012 to satisfy the loan agreements and guaranties; and

$6.249 million pursuant to a settlement agreement between the debtors and various Kazi parties whereby a sale of numerous properties from the Kazi parties to the debtors was conducted in the bankruptcy proceedings.

Poludniak also asserted the Kazi entities had paid $4,078,670 through nine monthly payments between April 2011 and February 2012, and additionally that $2,858,858 had been paid through the four separate asset sales in the bankruptcy proceedings. He provided evidence that numerous payments were made from June 2006 through December 2009, consisting of $1,863.920.62 on behalf of KFL, $6,828,514.29 on behalf of KMI, and $10,535,133.51 on behalf of KNY.

However, Poludniak did not explain how those prebankruptcy payments rebutted or undermined the analysis of the plaintiffs' amounts credited to defendant. In spite of plaintiffs' detailed showing, defendant reasserted that plaintiffs could not establish how much was owed on the various loans.

### 5. *Trial Court Ruling*

On April 4, 2013, the trial court granted plaintiffs' renewed motion for summary judgment, awarding plaintiffs judgment against Kazi in the amount of $9.9 million (the sum of the capped amounts on the KNY and KMI loan guarantees). Specifically, the court granted the motion as to the second and third causes of action, ruled it moot as to the first cause of action, and denied it as to the fourth cause of action.[5]

The court noted that the primary dispute centered on the amount of damages. Plaintiffs had argued that the loans were consolidated and fully cross-collateralized, and as a result, plaintiffs were entitled to apply any payments made in their discretion based

---

[5] Plaintiffs dropped their contentions regarding the first cause of action on the Florida Loan. Plaintiffs do not appeal the trial court's ruling on the Maryland loan (fourth cause of action). Hence, only the second and third causes of action are at issue on appeal.

8

on the Bankruptcy Court's April 14, 2011 order. The court observed that plaintiffs' approach—which treated all loans as one obligation pursuant to the Bankruptcy Court Order—made the individual balances hard to ascertain. Nonetheless, the court accepted plaintiffs' version of the balances due, finding that plaintiffs allocated the postbankruptcy sales to the various loans to establish the balances on the loans still exceeded the guaranties, and that defendant failed to rebut plaintiffs' showing. The court found, however, that the fourth cause of action based on the Maryland loan guaranty failed because plaintiffs' evidence failed to establish that the balance due on that loan was $1,536.206.29. The court awarded plaintiffs $9.9 million plus interest.

## DISCUSSION

### I. Standard of Review

[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action." (Code Civ. Proc.,[6] § 437c, subd. (p)(1); *Aguilar*, at p. 849.) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850.) Where summary judgment has been granted, we review the trial court's decision de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the trial court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

Where plaintiff seeks summary judgment, the burden is to produce admissible evidence on each element of a "cause of action" entitling him or her to judgment.

---

[6] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

9

(§ 437c, subd. (p)(1); *Hunter v. Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282, 1287; *S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.* (2010) 186 Cal.App.4th 383, 388.) A plaintiff who bears the burden of proof at trial by a preponderance of evidence must produce evidence that would require a reasonable trier of fact to find any underlying material fact more likely than not. "[O]therwise, [the plaintiff] would not be entitled to judgment as a matter of law." (*Aguilar*, *supra*, 25 Cal.4th at p. 851, italics omitted.) If plaintiff makes this showing, the burden shifts to the defendant "to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (§ 437c, subd. (p)(1).) The opposing party must do more than attack the credibility of the moving party's evidence. (§ 437c, subd. (e).)

## II.     Discussion

### A.     *Renewal of Summary Judgment Was Proper*

Section 437c, subdivision (f)(2), prohibits a party from renewing a summary judgment motion "unless that party establishes to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted" in the renewed motion. We review the trial court's decision to allow a party to file a renewed or subsequent motion for summary judgment for an abuse of discretion. (*Nieto v. Blue Shield of California Life & Health Ins. Co*. (2010) 181 Cal.App.4th 60, 72.)

In *Patterson v. Sacramento City Unified School Dist*. (2007) 155 Cal.App.4th 821, 827, the court held that section 437c, subdivision (f)(2) did not bar the second summary judgment motion when, even though both summary judgment motions involved duty, the first motion focused on whether there was a statutory basis for imposing a duty and the second motion focused on whether the common law defense of assumption of risk applied to negate any claim of duty. Similarly, in *Abassi v. Welke* (2004) 118 Cal.App.4th 1353, 1360, the court found the trial court properly exercised its discretion to entertain and rule upon a second summary judgment motion that was not based on new evidence, where the parties had an opportunity to brief the issue, a hearing was held, and summary judgment was the most efficient manner in which to proceed. On the other hand, in *Schachter v.*

10

*Citigroup, Inc. (*2005) 126 Cal.App.4th 726, the defendants filed a second summary judgment nearly four years after their first motion had been denied and the evidence submitted in support of the second motion, while "'cosmetically repackaged,'" was essentially identical to the first motion and no new issues were raised. (*Id.* at p. 738.) As a result, the defendant was prohibited from bringing the second motion since it raised no new facts, new circumstances, or change in law. (*Id*. at p. 739.)

Here, unlike *Schachter v. Citigroup, Inc.*, *supra*, 126 Cal.App.4th 726, plaintiffs' motions were not essentially identical. The sticking point of plaintiffs' first summary motion was a deficiency in its proof of damages. The renewed motion provided detailed evidence of the payments made on the various loans to establish a balance due that would trigger defendant's liability on the guaranties. Accordingly, we conclude that the trial court did not abuse its discretion in considering the merits of the second summary judgment motion.

### B.     *Evidentiary Objections Properly Overruled*

Defendant objected to exhibit E to the declaration of Harold Vinson. Exhibit E established the balances on the loan agreements for the KMI, KNY and KFL entities prior to bankruptcy, and the detailed application of the bankruptcy asset sales to those balances. Defendant contended the declaration lacked foundation and was speculative since it was not based on Vinson's personal knowledge. Defendant further asserted that the exhibit was hearsay; and the document was not properly authenticated.

These contentions are without merit. Section 437c, subdivision (b)(1), expressly provides that a motion for summary judgment shall be supported by "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." "The same rules of evidence that apply at trial also apply to the declarations submitted in support of and in opposition to motions for summary judgment. Declarations must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include inadmissible hearsay or opinion." (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761.) We

11

review the trial court's evidentiary rulings on summary judgment for abuse of discretion. (*Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1427.)

Here, Vinson established that his declaration was based upon his personal knowledge as loan servicer of the loans, and his personal knowledge established a foundation and authentication for the information contained in the financial records he relied on. Further, the business records exception to the hearsay rule of section 1271 of the Evidence Code permits introduction of the financial records. This hearsay exception avoids the time-consuming business of requiring every single individual in an organization who might have handled a given transaction to come to court and give oral testimony. (*Nichols v. McCoy* (1952) 38 Cal.2d 447, 449–450.)

### C.      *No Issues of Fact on Second and Third Causes of Action*

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) The only element subject to dispute in this case is whether plaintiffs have established the amount of damages. We find they have, and that defendant's showing on summary judgment does not create a triable issue of fact.

The parties agree that the guaranties were capped at $9.9 million. In order to establish damages, plaintiffs had to establish liability on the loans not otherwise paid through the bankruptcy proceedings (the sale or adequate protection payments) or paid before the bankruptcy proceedings.

Plaintiffs' evidence established that the opening principal balance of $61,418,390.86 was reduced by the purchaser's assumption of $52.5 million and the sales of collateral in the amount of $2,858,557.65, leaving a balance of $6,509,883.21. The balance accrued interest at the rate of two percent over the contract rate, which as of December 31, 2012, was $5,385,503.47, plus fees and expenses of $2,660,861. As a result, defendant's obligation was $14,106,197.68, which exceeded the guaranty of the KNY obligations ($5.550 million) and the guaranty of the KMI obligations ($4.35

12

million). Given that the bankruptcy court order provided the loans were cross-collateralized, the collateral for any one of the loans secured any of the other loans. (See, e.g., *In re Dye* (Bankr. M.D. Pa. 2013) 502 B.R. 47, 56 [collateral of six loans that were cross-collateralized served as adequate protection for other loans]; *In re Natale* (Bankr. D. Mass. 2104) 508 B.R. 790, 798 [where one property did not have enough equity to cover loan amount, creditor could look to cross-collateralized property].) Thus, payments realized from assets sales of any one of the debtor entities could be applied to any one of the debtors' loans to reduce the loan balance.

In an attempt to rebut plaintiffs' showing, defendant complains that plaintiffs' indebtedness calculation varies from between $11 million to $14 million, and refers to the numerous payments defendant made on the loan as well as the sale of assets between the Kazi entities and the debtor entities. Defendant's arguments amount to no more than smoke and mirrors. First, as discussed above plaintiffs' damages figures are not imprecise and do not range across a spectrum of figures as defendant suggests; rather, after crediting the various amounts paid through the bankruptcy, plaintiffs asserted that approximately $14 million was due. Further, plaintiffs' accounting of the proceeds of the bankruptcy sale, adequate protection payments during bankruptcy, and allocation of principal and interest is precisely calculated and based upon competent evidence.

On the other hand, defendant's arguments and figures do nothing to undermine the solidity of plaintiffs' calculations and defendant does not create a triable issue of fact. For example, the $6,249 million proceeds of the sale from the Kazi entities to the debtor entities in the bankruptcy proceedings was applied to defendant's indebtedness as plaintiffs have set forth. Defendant's analysis of the transaction has no substantiation for her interpretation of the application of the proceeds. If, as defendant asserts, plaintiffs had been improperly applying loan payments over the course of the life of the loans, defendant should be able to provide forensic analysis to show how their payments were additional to or different from the payments plaintiffs had credited to them. As a result of this dearth of evidence, we are at a loss to determine where defendant derives total

13

payments to plaintiffs in the sum of $92 million.  In summary, other than claiming plaintiffs' figures are wrong, defendant has failed to create a triable issue of fact that plaintiffs' calculations are incorrect.

## DISPOSITION

The judgment is affirmed.  Colonial Pacific Leasing Corporation, GE Capital Commercial, Inc., and General Electric Capital Business Asset Funding Corporation of Connecticut are to recover their costs on appeal.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

ROTHSCHILD, P. J.

MILLER, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.