[No. G025009. Fourth Dist., Div. Three. Jan. 30, 2001.]

ALICIA REMSEN et al., Plaintiffs and Appellants, v.
CAROL E. LAVACOT et al., as Trustees, etc., Defendants and
Appellants.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the parts entitled "The Remsens' Motion to Dismiss the Trustees' Appeal" and "The Trustees' Appeal."

## COUNSEL

Law Offices of John H. Mitchell, John H. Mitchell; Law Offices of Mitchell Samuelson and Mitchell Samuelson for Plaintiffs and Appellants.

Carol E. Lavacot, in pro. per., and for Defendants and Appellants.

## OPINION

**SILLS, P. J.**—Alicia and Greg Remsen, brother and sister and beneficiaries under the trust of their great-grandparents, appeal from the order of the probate court reconsidering its previous ruling that they were entitled to interest on their cash bequests and entering a new ruling that no interest was due. The trustees appeal from the probate court's order that the Remsens' petitions did not violate the trust's no contest clause. The Remsens moved to dismiss the trustees' appeal for untimeliness.

We affirm the order denying interest and grant the motion to dismiss.

In 1983 Willard and Ruth Cain created a revocable inter vivos trust. At the time, they owned 3.7 acres of beachfront property in Laguna Beach, which

they believed was worth over $10 million. The Cains decided to leave $1 million to their daughter; $300,000 to a friend; $200,000 to a cousin; $100,000 to each of their seven great-grandchildren; and the remainder to the principal beneficiaries, their four grandchildren. The terms of the trust provided distribution of the trust assets was not to be made until after all debts, taxes and administration expenses were paid.

Willard and Ruth passed away in August 1987 and January 1988, respectively. The Cains' granddaughter, Carol E. Lavacot, and her husband, Robert Lavacot, served as cotrustees. The trustees gave the beneficiaries copies of the trust and said the trust money would not be available until the Laguna property was sold and all the taxes were paid. After approximately a year had passed, the trustees held a meeting with the beneficiaries to update them on the status of the trust and advised them that the Laguna property had not yet been sold.

In November 1990, the Cains' great-granddaughter, Alicia Remsen, filed a petition demanding the trustees distribute her $100,000 inheritance. The trustees explained to the court that the trust funds could not be distributed because they were having difficulty selling the Laguna property. All offers to purchase had been contingent on the estate securing a city-approved tract map, which could not be obtained until the estate received: (1) approval from the Laguna Beach Planning Commission, which currently had concerns about the size and number of lots to be created; (2) approval from the city counsel; (3) resolution of claims made by State Lands Commission seeking lateral public access across the public trust tidelands located within the property; (4) an agreement with the Coastal Commission, which wanted vertical access for the public from Pacific Coast Highway to the coastal portions of the property; (5) an agreement with the County of Orange, which demanded access to the beach for its emergency and trash vehicles; and (6) resolution of a lawsuit filed by an adjacent owner to quiet title to a claimed easement. The court denied Alicia's petition.

Six years later, the trustees sent Alicia a letter stating escrow had "finally open[ed] on the trust property. The sale price is $5,200,000. At the close of escrow, there will be $3,200,000 paid with the remainder financed by us at a rate of 8%. [¶] Unfortunately, the IRS will take its cut which amounts to almost $2,000,000 and the State of California their cut, the amount not determined as yet. There are also administration costs that must be paid which also are, as yet, undetermined. As you can see, it will take some time to figure this all out. [¶] [When escrow closes, our] plan is to get everyone together for a meeting . . . and hopefully, distribute a percentage of your inheritance at that time."

Alicia received another letter from the trustees in January 1997 stating escrow had closed on the Laguna property but the trust received very little cash from the sale due to death taxes owed and closing costs. The trustees said they had applied for "an overpayment reimbursement from the IRS" and expected to be able to make a distribution when it arrived in a few months.

Alicia replied with a letter requesting documentation of the trust's assets and liabilities and a complete accounting. In April 1997, the trustees informed her she could have any information she wanted regarding the trust, but they did not want to deplete trust resources to have the volumes of documents photocopied. They invited Alicia to make an appointment and view the documents at their accountant's office. The trustees said they were planning to give Alicia her inheritance, "minus the expenses incurred to fight her lawsuit," as soon as the money became available.

Apparently Alicia and her brother Greg decided they could not wait any longer. On November 4, 1997, they filed a petition to direct the trustees to give them $100,000 each, plus interest from July 1, 1989, and attorney fees. They asked for an accounting and requested that Alicia's distribution not be reduced by costs incurred by the trust in defending against her 1990 petition.

In an effort to settle the case, the trustees sent Alicia a check for $85,000 and a letter stating the remainder would be delivered in proportioned amounts as soon as the trustees received payments from the buyer of the Laguna property. They also included a $85,000 check for her to give to Greg. Four months later, counsel for the Remsens informed the trustees that they were not interested in settling the lawsuit and wanted to be paid the rest of their inheritance plus interest.

In June 1998 the trustees filed an application seeking a determination that Alicia's petition in 1990 and the current petition qualified as "contests." The trustees' application and the Remsens' 1997 petition were heard together on July 31, 1998. After considering the parties' arguments, the court issued two minute orders. The first granted the Remsens' petition, stating, "Court finds $100,000 cash bequests to be 'general pecuniary devise[s]' entitled to earn interest after [one] year, if not yet distributed; payment of earned interest depends on estate ability. [¶] Court finds no authority for trustee to deduct atty. fees for cost of past trust litigation." The minute order also provided: "Csl Samuelson to prepare order." The second minute order denied the trustees' application, stating, "[The] court finds no violation of [the trust's] in terrorem clause . . . ."

On August 6, 1998, the trustees filed motions to reconsider both rulings. Four days later, they filed a petition for instructions, informing the court that

if interest was due on the cash bequests, no money would be left for the remainder primary beneficiaries (the grandchildren). The Remsens filed opposition to the motions for reconsideration and a response to the petition for instructions.

On September 4, 1998, the court heard the motions and petition and issued three minute orders. The first, relating to the no contest petition, stated, "Motion denied. [¶] No new ruling or new facts; no change in 7-31-98 ruling." The second order, relating to the characterization of the cash bequests as general pecuniary devises, stated, "Court announced a tentative ruling, heard argument re court's jurisdiction to reconsider its ruling, and took issue and motion under submission." In the third order, apparently made later that same day, the court stated, "Motion to reconsider ruling made on 7/31/98 that devise to Alicia and Greg Remsen is general pecuniary rather than specific. Having taken the issue of the court's jurisdiction to reconsider its 7/31/98 ruling for the above motion [under submission], the court now rules as follows: The court has determined it has the authority to reconsider its ruling on interest. [The Remsens' counsel] is given ten days to file a brief on whether the court should remove the interest payment on the distribution . . . . The above motion for reconsideration will be deemed submitted on 9/18/98; the petition for instructions will continue to trail the motion ruling."

The Remsens filed a brief arguing the court did not have jurisdiction to consider the matter because the trustees' motion for reconsideration failed to state new or different facts, circumstances or law, as required by Code of Civil Procedure section 1008. The trustees filed a response, arguing the requirements of section 1008 did not apply to interim orders, which was the case here. The trial court agreed and on November 5, 1998, determined it had jurisdiction to modify its prior findings. It issued a minute order stating, "[The] court hereby modifies its previous order to the extent that it ordered interest on the various bequests and instead, orders that principal only be paid. . . . The Court [has] jurisdiction to do so in light of the fact that a final (appealable) order was never made. . . . The Petition for instructions . . . is granted consistent with the above."

On January 15, 1999, the court signed an order prepared by the Remsens' counsel and reflecting a hearing date of November 4, 1998, which stated: "On September 18, 1998, the Court took the matter under submission . . . . [¶] Having reconsidered its previous order granting interest on the bequest to the various beneficiaries herein and good cause appearing therefor, the Court hereby modifies its previous order to the extent that it ordered interest on the various bequests and instead, orders that principal only be paid." It also

signed a separate order prepared by the trustees' counsel, reflecting a hearing date of September 4, 1998, which stated: "The motion to reconsider the ruling made on July 31, 1998, that the petition filed by Alicia Remsen dated November 11, 1990, did not constitute a contest nullifying standing to file the pending petition under Case number A156574, was heard and denied. [¶] Respondents' and Co-trustees' application for determination that the pending petition filed under case number A-156574 is a contest within the meaning of the trust at issue, is denied."

The Remsens filed a notice of appeal on March 16, 1999, from "the order of January 15, 1999 . . . denying interest on the bequests to the petitioners herein, . . . and from the order that the court had jurisdiction to modify its previous order." The trustees filed a notice of appeal on the same date "from the final judgement filed January 15, 1999, finding that the petition filed by [the Remsens] did not constitute a contest."

### *The Remsens' Appeal*

■ The Remsens claim the trial court had no jurisdiction to reconsider its order of July 31, 1998, finding their undistributed cash bequests were general pecuniary devises and entitled to earn interest. They claim Code of Civil Procedure section 1008 prescribes the exclusive method for a court to change one of its rulings, and here the statutory procedures were not followed.

The Remsens are correct that Code of Civil Procedure section 1008 was not followed. Whether a motion for reconsideration (§ 1008, subd. (a)) or renewal (§ 1008, subd. (b)), the statute requires it to be based on new or different facts, circumstances or law. The motion to reconsider here was not. Notwithstanding section 1008, however, the court retained its inherent jurisdiction to modify interim orders. Although subdivision (e) provides section 1008 applies to interim as well as final orders, and subdivision (c) limits the court's sua sponte power to cases where there has been a change in the law, the court's inherent power to correct its own rulings is based on the California Constitution and cannot be impaired by statute.

"We find [the] line of cases holding Code of Civil Procedure section 1008 is jurisdictional [see, e.g., *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674 [68 Cal.Rptr.2d 228]] to be inapplicable because section 1008 does not govern the court's ability, on its own motion, to reevaluate its own interim rulings. . . . Section 1008 is designed to conserve the court's resources by constraining litigants who would attempt to bring the same motion over and

over. On the other hand, these same judicial resources would be wasted if the court could not, on its own motion, review and change its interim rulings." (*Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1156-1157 [89 Cal.Rptr.2d 676]; see also *People v. Castello* (1998) 65 Cal.App.4th 1242 [77 Cal.Rptr.2d 314]; *Gailing v. Rose, Klein & Marias* (1996) 43 Cal.App.4th 1570 [51 Cal.Rptr.2d 381].)

The Remsens claimed at oral argument that the *Darling* case does not control here because the judge was not acting sua sponte but reconsidered in response to a litigant's motion. We find this to be a distinction without a difference. Whether the trial judge has an unprovoked flash of understanding in the middle of the night or is prompted to rethink an issue by the stimulus of a motion is "constitutionally immaterial" to the limitation on the power of the Legislature to regulate the judiciary. (Miller & Horton, *About Face* (Mar. 2000) 23 L.A. Law. 43, 49.)

The Remsens argue the order directing the trustees to pay them interest was an appealable order under Probate Code section 17200, subdivision (b)(1) or (b)(6). Thus, they argue, it was a final order and the court's entry of its minute order stripped it of the power to change its mind other than via Code of Civil Procedure section 1008. But a close reading of the order reveals it was not final. While the court found the undistributed cash bequests were entitled to earn interest, it also stated, "payment of earned interest depends on estate ability."

In *Northern Trust Bank v. Pineda* (1997) 58 Cal.App.4th 603 [68 Cal.Rptr.2d 357], the probate court made factual findings that the actions of objectors in litigation against the trust were unreasonable and in bad faith " 'such that the costs of this ex parte application are chargeable against their interests in the Trust . . . .' " (*Id.* at p. 605.) But the probate court crossed out that portion of the proposed order actually ordering the costs and fees to be charged against the objectors' interests. On appeal, the court found that no order had been entered and furthermore, any order was not final because "[t]he trial judge in the present case has not ordered that any sum of money be paid by the objectors. That issue, the amount to be charged, remains to be litigated. The trustee has no authority to execute on any property or interest at present." (*Id.* at p. 607.) The order here similarly leaves the trustees' duty to pay interest unresolved.

The Remsens claim even if the court had jurisdiction to reconsider its ruling, the order was untimely. They argue the court was required to enter its order within 60 days of the date of the motion (Code Civ. Proc., § 660) but did not do so until November 5, 91 days later.

Code of Civil Procedure section 660 restricts the power of the trial court to grant a motion for a new trial to "60 days from and after the mailing of notice of entry of judgment by the clerk . . . or 60 days from and after service on the moving party . . . of written notice of the entry of the judgment, whichever is earlier, or if such notice has not theretofore been given, then 60 days after filing of the first notice of intention to move for a new trial."

Although the statute on its face applies only to a motion for new trial, it has been extended to apply to motions for reconsideration of a final order under Code of Civil Procedure section 1008. (*Miller v. United Services Automobile Assn.* (1989) 213 Cal.App.3d 222, 226-228 [261 Cal.Rptr. 515], but see dis. opn. of Crosby, J., at p. 228.) But the limitations of Code of Civil Procedure section 660 do not apply here because, as we have discussed *ante*, the underlying order of July 31 was not final, so the motion to reconsider it was not governed by section 660.

The Remsens next argue the trial court's reconsideration of its order was erroneous on the merits; they claim they are entitled to interest on their cash bequests as a matter of law, citing Probate Code section 12003. That section states: "If a general pecuniary devise, including a general pecuniary devise in trust, is not distributed within one year after the testator's death, the devise bears interest thereafter."

Probate Code section 12003 does not resolve the Remsens' complaint for two reasons. First, the section applies only to decedent's estates, not to the administration of trusts. The reference in the statute to "a general pecuniary devise in trust" is to a fixed sum of money given *from* a decedent's estate *to* a trust, i.e., to be held on the beneficiary's behalf by a trustee, rather than an outright gift. Second, the section does not apply "in cases where the decedent died before July 1, 1989." (Prob. Code, § 12007.)

The trustees assert there was no provision in trust law for the payment of interest on a general pecuniary gift from a revocable living trust before July 1, 1989. We agree. The revocable living trust has become a popular alternative to the traditional method of leaving property by will. One of the reasons for its popularity is that because it is an inter vivos transfer of property, it allows a person to direct the disposition of property after his death without subjecting his heirs to a probate proceeding and to many of the supervisory requirements imposed by state law trusts created by will.

In California, the law of trust administration has only recently caught up with the law of decedent's estates in regulating interest payable by a trustee.

In 1986, the California Revised Uniform Principal and Income Act was enacted as part of the trust law. (Prob. Code, former §§ 16300-16313.) This was a "well-developed scheme for allocating to the income and remainder beneficiaries of the trust interest and income that accrue during trust administration," but it did not address distributions *from* the trust. (Resommendation Relating to Interest and Income During Administration (Dec. 1987) 19 Cal. Law Revision Com. Rep. (1988) p. 1024.) In 1988, Probate Code former sections 16314 and 16315 were added, "[to] parallel[ ] the law applicable to probate estate administration: if distribution of a general pecuniary gift from a trust is not made when due, the amount of the distribution accrues interest from the date it is due, except in the case of a distribution due on the death of the settlor, in which case interest begins to run one year after death." (*Ibid.*)

Probate Code former section 16314 provided that a general pecuniary gift distributable under a trust "bears interest from the date of the settlor's death or other event upon which the distributee's right to receive the gift occurs, in the same manner as a . . . general pecuniary devise . . . under a will . . . ." But as to trusts created before July 1, 1989 (as this one was), former section 16314 "do[es] not affect any aspect of the trust administration that occurred, or rights of beneficiaries that existed, before that date." (Prob. Code, former § 16315.)[1] As in many other states, before 1989 there was no requirement that a trustee of a revocable living trust pay interest on a cash gift. (See Tax Law and Estate Planning Course Handbook Series; Estate Planning and Administration, *Planning and Administration of a Large Estate* (May 1985) 159 PLI Real Estate 9 ["State Law frequently requires that interest be paid on unpaid bequests; these laws usually do not apply to bequests made by revocable living trusts"].)

### *Remsens' Motion to Dismiss the Trustees' Appeal**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### *The Trustees' Appeal**

. . . . . . . . . . . . . . . . . . . . . . . . .

[1]Probate Code former section 16314 was repealed in 1999 and is restated in section 16340. Former section 16315 was repealed at the same time and is not restated. Now section 16339 says, "This chapter applies to every trust or decedent's estate existing on or after January 1, 2000, except as otherwise provided in the trust or will or in this chapter [chapter 3 (Revised Uniform Principal and Income Act) of part 4 (Trust Administration) of division 9 (Trust Law) of the Probate Code]."

*See footnote, *ante*, page 421.

*Disposition*

The order denying interest is affirmed; the motion to dismiss the trustees' appeal is granted. Each party is to bear its own costs.

Crosby, J., and Rylaarsdam, J., concurred.

On February 28, 2001, the opinion was modifed to read as printed above.