[No. S126630. June 9, 2005.]

PHILIP LE FRANCOIS et al., Plaintiffs and Appellants, v.
PRABHU GOEL et al., Defendants and Respondents.

## Counsel

Robinson & Wood, Jon B. Zimmerman, Helen E. Williams and Joanna L. Mishler for Plaintiffs and Appellants.

Thomas M. Eells as Amicus Curiae on behalf of Plaintiffs and Appellants.

Reed Smith, Paul D. Fogel; Law Offices of Philip R. McCowan, Philip R. McCowan and John M. Ingle for Defendants and Respondents.

Skadden, Arps, Slate, Meagher & Flom, Raoul D. Kennedy, Davidson M. Pattiz, Douglas B. Adler and Seth M. Schwartz for Citigroup, Inc., and Salomon Smith Barney, Inc., as Amici Curiae on behalf of Defendants and Respondents.

## Opinion

**CHIN, J.**—In this lawsuit, defendants moved for summary judgment. The trial court denied the motion. More than a year later, some of the defendants again moved for summary judgment on the same grounds. The court granted the second motion. We must decide whether the court had authority to consider the new motion even though it was not based on either new facts or new law. Code of Civil Procedure sections 437c, subdivision (f)(2), and 1008 seemingly prohibit a party from making such a new motion.[1] The Court of Appeal held that the trial court had inherent power derived from the California Constitution to consider the second motion notwithstanding any statutory limitation.

We conclude that sections 437c, subdivision (f)(2), and 1008 prohibit a *party* from making renewed motions not based on new facts or law, but do

---

[1] All further statutory citations are to the Code of Civil Procedure.

not limit a *court's* ability to reconsider its previous interim orders on its own motion, as long as it gives the parties notice that it may do so and a reasonable opportunity to litigate the question. So interpreted, the statutes are constitutional.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs Philip Le Francois and Eric Herald sued their former employer, Duet Technologies, Inc., and three officers of that company, claiming that the officers had made certain injurious misrepresentations and false promises. All defendants moved for summary judgment or, in the alternative, summary adjudication (hereafter simply summary judgment). The trial court denied the motion, ruling that plaintiffs had raised a triable issue of material fact. Over a year later, the individual defendants filed a new motion for summary judgment based on the same grounds as the first motion. Plaintiffs opposed the motion on substantially the same basis that they opposed the first motion. They also objected that the second motion was impermissible under section 437c, subdivision (f)(2). The second motion was originally scheduled to be heard by the judge who had heard the first motion, but, without objection, it was transferred to another judge. The second judge granted the new motion and later entered judgment in favor of the individual defendants.[2]

Plaintiffs appealed. The Court of Appeal affirmed the judgment. It concluded that because the second motion was based on the same law and evidence as the first motion, the motion violated sections 437c, subdivision (f)(2), and 1008. It also concluded, however, that the trial court had "inherent power to rule upon the second motion even if it was not based upon new facts or law," and this "inherent power does not depend on statute, nor may a statute confine it." Accordingly, it held "that notwithstanding either section 1008 or section 437c (f)(2), [the second judge] had inherent power to exercise his 'constitutionally derived authority to reconsider the prior interim ruling and correct an error of law on a dispositive issue.' " (Quoting *Scott Co. v. United States Fidelity & Guaranty Ins. Co.* (2003) 107 Cal.App.4th 197, 212 [132 Cal.Rptr.2d 89].)

We granted plaintiffs' petition for review to decide whether the trial court had authority to consider and grant the individual defendants' second motion for summary judgment.

---

[2] The Court of Appeal held that because the motion was transferred without objection, plaintiffs could not challenge the propriety of that transfer on appeal. This issue is not before us on review, and we express no opinion on when and under what circumstances one judge may revisit a ruling of another judge.

## II. DISCUSSION

### A. *Background*

Two statutes are relevant here: sections 437c, subdivision (f)(2), and 1008. Section 437c contains detailed procedures governing motions for summary judgment. Subdivision (f)(2) is merely a small part of that section. As relevant, that subdivision provides that "a party may not move for summary judgment based on issues asserted in a prior motion for summary adjudication and denied by the court, unless that party establishes to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion." This language was added in 1990, effective January 1, 1991, "to make the summary judgment process more efficient and to reduce the opportunities for abuses of the procedure." (*Bagley v. TRW, Inc.* (1999) 73 Cal.App.4th 1092, 1096, fn. 3 [86 Cal.Rptr.2d 909], citing Sen. Rules Com., Off. of Sen. Floor Analyses, revision of Sen. Bill No. 2594 (1989–1990 Reg. Sess.), Aug. 23, 1990; see Stats. 1990, ch. 1561, § 2, p. 7332.)

 Section 1008 more generally states procedures for applications to reconsider any previous interim court order. It "applies to all applications for interim orders" (§ 1008, subd. (g)) and provides time limits and other requirements for such applications. It contains several provisions relevant here. It generally requires that any motion for reconsideration be based "upon new or different facts, circumstances, or law . . . ." (§ 1008, subds. (a), (b).) It also provides: "If a court at any time determines that there has been a change of law that warrants it to reconsider a prior order it entered, it may do so on its own motion and enter a different order." (§ 1008, subd. (c).) Finally, it provides: "This section specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions, and applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final. *No application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section.*" (§ 1008, subd. (e), italics added.)

Subdivisions (c) and (e) of section 1008 were added in 1992, effective January 1, 1993. (Stats. 1992, ch. 460, § 4, pp. 1832–1833.) Legislative findings state that the 1992 amendment was intended to clarify that no motion to reconsider may be heard unless it is based on new or different facts, circumstances, or law, and that the Legislature found it desirable "to reduce the number of motions to reconsider and renewals of previous motions heard by judges in this state." (Stats. 1992, ch. 460, § 1, p. 1831; see *Garcia v.*

*Hejmadi* (1997) 58 Cal.App.4th 674, 688 [68 Cal.Rptr.2d 228]; *Morite of California v. Superior Court* (1993) 19 Cal.App.4th 485, 491–492 [23 Cal.Rptr.2d 666].) Before these changes, section 1008 "purported to be neither jurisdictional nor exclusive." (*Kollander Construction, Inc. v. Superior Court* (2002) 98 Cal.App.4th 304, 310 [119 Cal.Rptr.2d 614], and cases cited therein.)

One court has said that cases involving repeated summary judgment motions "must be decided by the specific requirements of the summary judgment statute [section 437c], not the general provisions of the reconsideration statute [section 1008]." (*Bagley v. TRW, Inc.*, *supra*, 73 Cal.App.4th at p. 1096, fn. 3; see also *Schachter v. Citigroup, Inc.* (2005) 126 Cal.App.4th 726, 738 [23 Cal.Rptr.3d 920].) This conclusion certainly seems logical. But for present purposes it does not particularly matter, for the two statutes say essentially the same thing: A repeated motion or motion for reconsideration must be based on new facts or law. As we discuss further in part II.C., *post*, any language differences between the statutes do not warrant different treatment of the issue before us.

The Court of Appeal found that the second summary judgment motion at issue here was based on the same law and evidence as the first motion and hence violated sections 437c and 1008. We did not grant review on this question and, accordingly, we accept the Court of Appeal's finding in this regard. (See *People v. Weiss* (1999) 20 Cal.4th 1073, 1076–1077 [86 Cal.Rptr.2d 337, 978 P.2d 1257].) The question we must decide is the significance of this finding. Specifically, we must decide whether the trial court had authority to consider, and then grant, the second summary judgment motion notwithstanding the provisions of sections 437c and 1008.

At first, the cases interpreting these statutes as amended in the 1990's generally held that a trial court has no authority or, as some of the cases phrased it, *jurisdiction* to consider a motion that violated section 437c or 1008. (*Bagley v. TRW, Inc.*, *supra*, 73 Cal.App.4th at pp. 1096–1097 [§ 437c]; *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 669–670 [73 Cal.Rptr.2d 242] [§ 1008]; *Baldwin v. Home Savings of America* (1997) 59 Cal.App.4th 1192, 1195–1201 [69 Cal.Rptr.2d 592] [§ 1008]; *Garcia v. Hejmadi*, *supra*, 58 Cal.App.4th at pp. 690–691 [§ 1008]; *Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1498–1502 [38 Cal.Rptr.2d 626] [§ 1008]; *Morite of California v. Superior Court*, *supra*, 19 Cal.App.4th at pp. 490–493 [§ 1008]; but see *Bernstein v. Consolidated American Ins. Co.* (1995) 37 Cal.App.4th 763, 774 [43 Cal.Rptr.2d 817] [finding the requirements of § 437c were met, but also noting that the court was merely "correcting an erroneous ruling on its own motion"].) Only the most recent of these cases considered whether separation of powers principles prevent the

Legislature from imposing this limitation, and that case summarily rejected that conclusion. (*Bagley v. TRW, Inc., supra,* 73 Cal.App.4th at p. 1097, fn. 5 ["a court does not have the inherent power to act in a manner that is prohibited by statute"].)

One of these decisions recognized problems with its conclusion that the trial court could not correct its mistakes, but felt powerless to rule otherwise. "We are not unmindful of the awkward consequences likely to flow from this holding, which will in some instances bar trial judges from correcting rulings belatedly shown to be erroneous. Judicial inefficiencies may also result from the need for an appeal that would not have been required if correction could have been made by a trial court willing to do so. These problems stem not from our holding, however, but by the 1992 amendment to section 1008, which solved one set of problems by possibly creating another. Given the jurisdictional nature of the present statute, these new problems are not amenable to a judicial solution. The answer, if there is one, will have to come from the Legislature." (*Baldwin v. Home Savings of America, supra,* 59 Cal.App.4th at p. 1200, fn. 10.)

More recent cases have taken different approaches and concluded that, to some extent at least, sections 437c and 1008 violate separation of powers principles, or would do so if interpreted to limit the trial court's power to act. These cases generally are of two types.

One line of cases concluded that the statutes limit only the parties' ability to bring renewed motions, and they do not limit the court's power to reconsider its rulings on its own motion. Typical is *Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148 [89 Cal.Rptr.2d 676], which found the "line of cases holding Code of Civil Procedure section 1008 is jurisdictional to be inapplicable because section 1008 does not govern the court's ability, on its own motion, to reevaluate its own interim rulings. [Citation.] Instead, the trial court retains the inherent authority to change its decision at any time prior to the entry of judgment. [Citation.] Section 1008 is designed to conserve the court's resources by constraining litigants who would attempt to bring the same motion over and over. On the other hand, these same judicial resources would be wasted if the court could not, on its own motion, review and change its interim rulings." (*Id.* at pp. 1156–1157; to similar effect see also *Schachter v. Citigroup, Inc., supra,* 126 Cal.App.4th 726; *Abassi v. Welke* (2004) 118 Cal.App.4th 1353, 1359–1360 [14 Cal.Rptr.3d 336]; *Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368, 380–391 [130 Cal.Rptr.2d 754]; *Case v. Lazben Financial Co.* (2002) 99 Cal.App.4th 172, 178–189 [121 Cal.Rptr.2d 405]; *People v. Castello* (1998) 65 Cal.App.4th 1242, 1248–1250 [77 Cal.Rptr.2d 314] [dicta].)

Another line of cases rejected the distinction between a party's motion and the court's ability to act on its own motion. These cases concluded that a trial court has inherent power to reconsider its prior interim orders, either on its own motion or on motion of a party, and the statutes violate separation of power principles to the extent they limit this power. The first of these cases was *Remsen v. Lavacot* (2001) 87 Cal.App.4th 421 [104 Cal.Rptr.2d 612], which found that whether the court acted sua sponte or in response to a litigant's motion "to be a distinction without a difference. Whether the trial judge has an unprovoked flash of understanding in the middle of the night or is prompted to rethink an issue by the stimulus of a motion is 'constitutionally immaterial' to the limitation on the power of the Legislature to regulate the judiciary." (*Id.* at p. 427.) Some of the most recent decisions have followed this reasoning. (*Scott Co. v. United States Fidelity & Guaranty Ins. Co., supra,* 107 Cal.App.4th at pp. 205–212; *Wozniak v. Lucutz* (2002) 102 Cal.App.4th 1031, 1041–1042 [126 Cal.Rptr.2d 310]; *Kollander Construction, Inc. v. Superior Court, supra,* 98 Cal.App.4th at pp. 310–314; *Blake v. Ecker* (2001) 93 Cal.App.4th 728, 739, fn. 10 [113 Cal.Rptr.2d 422].) The Court of Appeal here agreed with these cases.

Thus the questions are squarely presented: May a trial court reconsider interim orders it has already made in the absence of new facts or new law? If so, may it do so only on its own motion, or may a party move for reconsideration? Because separation of power principles are pertinent to the question, we next discuss the relevant principles as they have developed in California. Then, with these principles in mind, we will turn to the correct interpretation and application of sections 437c and 1008.

B. *Separation of powers principles*

In recent years, this court has had several occasions to consider principles of separation of powers as they relate to the relationship between the legislative and judicial branches. (E.g., *People v. Bunn* (2002) 27 Cal.4th 1, 14–17 [115 Cal.Rptr.2d 192, 37 P.3d 380]; *Obrien v. Jones* (2000) 23 Cal.4th 40, 47–49 [96 Cal.Rptr.2d 205, 999 P.2d 95]; *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 52–59 [51 Cal.Rptr.2d 837, 913 P.2d 1046] (*County of Mendocino*).) The case most instructive here is *County of Mendocino, supra,* 13 Cal.4th 45. There, the question was whether the Legislature had impermissibly infringed on judicial powers when it enacted legislation authorizing counties to designate unpaid furlough days on which the courts must be closed. (*Id.* at p. 48.) We concluded the Legislature acted within its power. Largely from this case, but also from the others, we can distill the basic principles we must consider in deciding whether the Legislature impermissibly infringed on judicial powers when it amended sections 437c and 1008 in the 1990's.

"From its inception, the California Constitution has contained an explicit provision embodying the separation of powers doctrine." (*County of Mendocino, supra,* 13 Cal.4th at p. 52.) That Constitution apportions the powers of state government among the three branches familiar to all students of government in this country—legislative, executive, and judicial—and states that "[p]ersons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.) Despite the apparent sharp division of powers among the governmental branches that the California Constitution provides, in reality the branches are mutually dependent in many respects, and the actions of one branch may significantly affect another branch. (*County of Mendocino, supra,* at p. 52.) "Indeed, upon brief reflection, the substantial interrelatedness of the three branches' actions is apparent and commonplace: the judiciary passes upon the constitutional validity of legislative and executive actions, *the Legislature enacts statutes that govern the procedures and evidentiary rules applicable in judicial and executive proceedings,* and the Governor appoints judges and participates in the legislative process through the veto power. Such interrelationship, of course, lies at the heart of the constitutional theory of 'checks and balances' that the separation of powers doctrine is intended to serve." (*Id.* at pp. 52–53, italics added.)

"At the same time, this doctrine unquestionably places limits upon the actions of each branch with respect to the other branches." (*County of Mendocino, supra,* 13 Cal.4th at p. 53.) The Constitution "vest[s] each branch with certain 'core' [citation] or 'essential' [citation] functions that may not be usurped by another branch." (*People v. Bunn, supra,* 27 Cal.4th at p. 14.) In *County of Mendocino,* we discussed several earlier cases "that addressed the subject of 'inherent judicial power' and the validity of legislative actions relating to the judicial branch." (*County of Mendocino, supra,* at p. 53.) We quoted especially pertinent language from one of those cases: " 'Of necessity, the judicial department as well as the executive must in most matters yield to the power of statutory enactments. [Citations.] *The power of the legislature to regulate criminal and civil proceedings and appeals is undisputed.*' " (*County of Mendocino, supra,* at p. 54, quoting *Brydonjack v. State Bar* (1929) 208 Cal. 439, 442–443 [281 P. 1018], italics added.) But this power has limitations. " 'The sum total of this matter is that *the legislature may put reasonable restrictions upon constitutional functions of the courts provided they do not defeat or materially impair the exercise of those functions.* This power has been described as follows: ". . . [T]he mere procedure by which jurisdiction is to be exercised may be prescribed by the Legislature, unless, indeed, such regulations should be found to substantially impair the constitutional powers of the courts, or practically defeat their exercise." [Citations.]' " (*County of Mendocino, supra,* at p. 54, italics added, quoting *Brydonjack v. State Bar, supra,* at p. 444.)

After reviewing these earlier decisions, we stated the basic test: "[T]he Legislature generally may adopt reasonable regulations affecting a court's inherent powers or functions, so long as the legislation does not 'defeat' or 'materially impair' a court's exercise of its constitutional power or the fulfillment of its constitutional function." (*County of Mendocino, supra,* 13 Cal.4th at pp. 58–59; see also *People v. Bunn, supra,* 27 Cal.4th at p. 16.)[3] One of the core judicial functions that the Legislature may regulate but not usurp is "the essential power of the judiciary to resolve 'specific controversies' between parties." (*People v. Bunn, supra,* at p. 15; see also *id.* at p. 22.)

■ In sum, the separation of powers test applicable here can be stated quite simply: The Legislature may regulate the courts' inherent power to resolve specific controversies between parties, but it may not defeat or materially impair the courts' exercise of that power. With this test in mind, we next consider how to interpret and apply sections 437c and 1008 in this case.

C. *Interpretation and application of sections 437c and 1008*

Plaintiffs urge us to adopt the line of cases represented by *Kerns v. CSE Ins. Group, supra,* 106 Cal.App.4th 368, which holds that sections 437c and 1008 validly limit the *parties'* ability to make repetitive motions but do not limit the *court's* authority to act on its own motion. They argue that this line of cases "strikes the right balance between permissible legislation affecting court procedures and protection of the inherent power of the court to revisit a prior interim ruling on its own." Defendants urge us to adopt the view of the Court of Appeal here and the cases it relies on, which hold that notwithstanding sections 437c and 1008, a trial court has the inherent authority to revisit its previous orders, whether the court acts on its own motion or on motion of a party. They argue that "the line plaintiffs draw between impermissible action by a court on a party's initiative and permissible action by a court on its own makes no constitutional sense. What is determinative is whether there is error to correct, not who discerns the error's existence." We agree with plaintiffs.

---

[3] In *County of Mendocino,* we also noted that one of the earlier cases, *Millholen v. Riley* (1930) 211 Cal. 29, 34 [293 P. 69], had said that the Legislature may regulate the courts' operation " 'so long as their efficiency is not thereby impaired.' " (*County of Mendocino, supra,* 13 Cal.4th at p. 59, fn. 6; see also *Walker v. Superior Court* (1991) 53 Cal.3d 257, 267 [279 Cal.Rptr. 576, 807 P.2d 418] [quoting the same language from *Millholen*].) We explained, however, that this language did not mean that a statute is unconstitutional whenever it "increases a court's burden or makes the court less 'efficient.' " (*County of Mendocino, supra,* at p. 59, fn. 6.) Instead, "[w]hen the decisions discussed above are read as a whole, it is readily apparent that the standard they have embraced is one that looks to whether the legislation 'defeats' or 'materially impairs' a court's ability to perform its constitutional functions." (*Ibid.*)

Sections 437c and 1008 clearly limit the parties' ability to file repetitive motions. To the extent they only do that, they come within the Legislature's authority to enact statutes affecting the judicial branch. As one recent case noted, "one need only peruse the Code of Civil Procedure to be reminded that numerous statutes govern the procedures litigants must follow in the courts of this state." (*Case v. Lazben Financial Co.*, *supra*, 99 Cal.App.4th at p. 184.) The separation of powers limitation on the Legislature's power to regulate procedure is narrow. Chaos could ensue if courts were generally able to pick and choose which provisions of the Code of Civil Procedure to follow and which to disregard as infringing on their inherent powers. The same concern applies to the Evidence Code, which, after all, generally limits a court's ability to consider evidence. In most matters, the judicial branch must necessarily yield to the legislative power to enact statutes. (*County of Mendocino*, *supra*, 13 Cal.4th at p. 54, citing *Brydonjack v. State Bar*, *supra*, 208 Cal. at pp. 442–443.) Only if a legislative regulation truly defeats or *materially impairs* the courts' core functions, including, as relevant here, their ability to resolve controversies, may a court declare it invalid.

We agree with the court in *Kerns v. CSE Ins. Group*, *supra*, 106 Cal.App.4th at page 389, that "by eliminating the distinction between a trial court's action taken sua sponte and that made in response to a litigant's motion, the more recent cases such as *Remsen* and *Wosniak* go too far toward eviscerating the clear jurisdictional language of section 1008, essentially rendering the provisions of the statute meaningless." This discussion would also apply to section 437c. These statutes serve a purpose. They are "designed to conserve the court's resources by constraining litigants who would attempt to bring the same motion over and over." (*Darling, Hall & Rae v. Kritt*, *supra*, 75 Cal.App.4th at p. 1157.) Limiting the parties' ability to file repetitive motions does not defeat, or even materially impair, the court's power to resolve specific controversies between parties. Indeed, such a limitation might *increase* the courts' efficiency. Accordingly, we uphold the statutes to the extent they apply to motions filed by the parties.

Whether these statutes can validly limit the court's authority to act on its own motion to correct its own errors presents quite a different question. Such a limitation might go too far. If interpreted to limit the court's ability to reconsider its own rulings, these statutes might, as one court concluded, "emasculate the judiciary's core power to decide controversies between parties. The legislative restriction of a court's ability to sua sponte reconsider its own rulings is not merely a reasonable regulation on judicial functions. Instead, such a restriction would directly and materially impair and defeat the court's most basic functions, exercising its discretion to rule upon controversies between the parties and ensuring the orderly administration of justice. Courts are empowered to decide controversies, a power derived from the state constitution. We are hard pressed to conceive of a restriction that goes more

directly to the heart of a court's constitutionally mandated functions. Under [a strict] reading, if a court realizes it has misunderstood or misapplied the law, it is prohibited from revisiting its ruling, whether it realizes its mistake 10 minutes or 10 days later, and no matter how obvious its error or how draconian the effects of its misstep. 'A court could not operate successfully under the requirement of infallibility in its interim rulings. Miscarriage of justice results where a court is unable to correct its own perceived legal errors . . . .' " (*Case v. Lazben Financial Co.*, *supra*, 99 Cal.App.4th at p. 185.)

But we need not decide this constitutional question. Consistent with our common practice of construing statutes, when reasonable, to avoid difficult constitutional questions (see *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 846–847 [123 Cal.Rptr.2d 40, 50 P.3d 751]), we interpret the statutes the way many Courts of Appeal have done—as imposing a limitation on the parties' ability to file repetitive motions, but not on the court's authority to reconsider its prior interim rulings on its own motion.[4] Section 437c, subdivision (f)(2), can easily be so interpreted. On its face, that subdivision merely says that "a *party* may not" make a motion that violates its provisions. (Italics added.) It says nothing limiting the *court's* ability to act.

The question is a bit more complex regarding section 1008. In two ways that statute and its legislative history suggest that it has a broader meaning and does restrict the court's authority to act on its own. (See *Case v. Lazben Financial Co.*, *supra*, 99 Cal.App.4th at p. 188.) First, section 1008, subdivision (c), added at the same time as subdivision (e), states that a court may reconsider a prior order on its own motion *if* it determines the law has changed. This subdivision contains a negative implication that the court may not reconsider such an order absent a change in the law. (See *Clark v. Burleigh* (1992) 4 Cal.4th 474, 489 [14 Cal.Rptr.2d 455, 841 P.2d 975].) "The expression of some things in a statute necessarily means the exclusion of other things not expressed." (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 [25 Cal.Rptr.2d 500, 863 P.2d 745].) Second, at one stage of the legislative process, the bill was amended in the Senate to expressly provide that section 1008 "shall not be construed to limit in any manner the right of a judge to exercise his or her own discretion in reconsidering any order he or she may have issued." (Sen. Amend. to Sen. Bill No. 1805 (1991–1992 Reg. Sess.) Apr. 21, 1992.) This amendment was later deleted in the Assembly, suggesting the Legislature may have wanted to limit the right of judges to act on their own. (Assem. Amend. to Sen. Bill No. 1805 (1991–1992 Reg. Sess.) July 9, 1992.)

---

[4] What we say about the court's ability to reconsider *interim* orders does not necessarily apply to *final* orders, which present quite different concerns.

█ But these circumstances are not conclusive. The deletion of the amendment in the Assembly may have implied an intent to limit the court's authority, but it may instead merely have reflected "an assessment that the discretionary language was superfluous." (*People v. Castello, supra,* 65 Cal.App.4th at pp. 1249–1250, fn. 7.) Moreover, if subdivision (c) of section 1008 contains a negative implication, so, too, does subdivision (e) of that section, but one that points in the opposite direction as subdivision (c). Subdivision (e), the only part of section 1008 that expressly limits the court's jurisdiction, speaks only of the court's reconsideration of a party's motion and does not mention the court's ability to act on its own. Thus, its negative implication is that the Legislature did not intend any greater limitation on the court's jurisdiction. The maxim that the expression of some things necessarily means the exclusion of things not expressed is not immutable. (*People v. Anzalone* (1999) 19 Cal.4th 1074, 1078–1079 [81 Cal.Rptr.2d 315, 969 P.2d 160].) Here, we cannot give effect to both contradictory negative implications. Subdivision (e), the one dealing with the scope of the court's jurisdiction, supports a narrow interpretation of the statute more strongly than subdivision (c) supports a broad interpretation. As one court noted, "[t]he plain language of section 1008 consistently refers to 'applications' for reconsideration and 'renewals' of previous motions." (*Case v. Lazben Financial Co., supra,* 99 Cal.App.4th at p. 186.) "Clearly, trial courts do not make applications, motions, or renewals of motions to themselves." (*Id.* at p. 187.)

Moreover, we see no hint that the Legislature wanted to hinder the courts' ability to act rather than merely protect them from repetitive motions, or that it intended, as one court phrased it, to "solve[] one set of problems by possibly creating another." (*Baldwin v. Home Savings of America, supra,* 59 Cal.App.4th at p. 1200, fn. 10.) "[T]he stated legislative purpose behind the 1992 amendment to section 1008 was to conserve judicial resources. . . . This legislative purpose is advanced if section 1008 is understood to apply to the actions of the parties, not to a court's sua sponte reconsideration of its own interim order. When the court rules upon a party's motion, it is to be expected that the losing party will often feel the court has erred, and therefore may be inclined to seek reconsideration if such a procedure is readily available. Thus, absent section 1008, trial courts might find themselves inundated with reconsideration motions requiring that they rehash issues upon which they have already ruled and about which they have no doubt. Section 1008, properly construed, protects trial courts from being forced to squander judicial time in this fashion. We think it would be a much less common occurrence, however, that a trial court would sua sponte conclude that its

prior ruling was erroneous and seek to modify it. Forcing the parties to proceed where there is recognized error in the case would result in an enormous waste of the court's and the parties' resources." (*Case v. Lazben Financial Co., supra,* 99 Cal.App.4th at p. 187.)

This construction of the statutes also reconciles the earlier cases that had interpreted them as limiting the courts' jurisdiction. "Significantly, all of these cases involved situations in which the disputed reconsideration, modification or reversal of a prior interim order was brought about upon the motion of a party litigant, and not by the trial court acting on its own motion. [Citations.] None of these cases addressed the specific question of whether and to what extent section 1008 may impair a trial court's inherent constitutional power sua sponte to reconsider, correct and change its own interim decisions." (*Kerns v. CSE Ins. Group, supra,* 106 Cal.App.4th at pp. 390–391, fn. omitted.)

■ For these reasons, we distinguish, but do not disapprove, the early cases, beginning with *Morite of California v. Superior Court, supra,* 19 Cal.App.4th 485, that held that sections 437c and 1008 limit the court's power (or jurisdiction) to reconsider motions by the parties. We agree with the later line of cases, beginning with *Darling, Hall & Rae v. Kritt, supra,* 75 Cal.App.4th 1148 (and, in dicta, *People v. Castello, supra,* 65 Cal.App.4th 1242), that interpreted the statutes as limiting the parties' power to file repetitive motions but not the court's authority to reconsider interim rulings on its own motion. Finally, we disapprove, to the extent they are inconsistent with this opinion, the line of cases that found the statutes unconstitutional even to the extent they limit the parties' ability to file repetitive motions.[5] We hold that sections 437c and 1008 limit the parties' ability to file repetitive motions but do not limit the court's ability, on its own motion, to reconsider its prior interim orders so it may correct its own errors.

One court found the distinction between a court's acting on its own motion and its acting in response to a litigant's motion "to be a distinction without a difference." (*Remsen v. Lavacot, supra,* 87 Cal.App.4th at p. 427.) One of the commentaries is more specific: "This may be a distinction without a difference because what if the losing party simply *asks* the court (e.g., at a status conference) to reconsider the matter?" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2004) ¶ 9:327.8, p. 9(1)-107.) This concern is legitimate. If all that results from this distinction

---

[5] Accordingly, we disapprove to this extent *Scott Co. v. United States Fidelity & Guaranty Ins. Co., supra,* 107 Cal.App.4th 197; *Wozniak v. Lucutz, supra,* 102 Cal.App.4th 1031; *Kollander Construction, Inc. v. Superior Court, supra,* 98 Cal.App.4th 304; *Blake v. Ecker, supra,* 93 Cal.App.4th 728; and *Remsen v. Lavacot, supra,* 87 Cal.App.4th 421.

is that parties merely change the name of their motion from, as in this case, a motion for summary judgment to something like, "motion for the court to reconsider on its own motion its previous order denying summary judgment," and the matter is otherwise litigated in routine fashion, then nothing of substance will be accomplished, and sections 437c, subdivision (f)(2), and 1008 will be rendered essentially meaningless. We believe, however, that the Legislature intended this to be a distinction *with* a difference.

██ · We cannot prevent a party from communicating the view to a court that it should reconsider a prior ruling (although any such communication should never be ex parte). We agree that it should not matter whether the "judge has an unprovoked flash of understanding in the middle of the night" (*Remsen v. Lavacot, supra*, 87 Cal.App.4th at p. 427) or acts in response to a party's suggestion. If a court believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief. For example, nothing would prevent the losing party from asking the court at a status conference to reconsider a ruling. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, § 9:327.8, p. 9(1)-107.) But a party may not file a written *motion* to reconsider that has procedural significance if it does not satisfy the requirements of section 437c, subdivision (f)(2), or 1008. The court need not rule on any suggestion that it should reconsider a previous ruling and, without more, another party would not be expected to respond to such a suggestion. As one court explained, "were a party to suggest that the court reconsider a motion, the court would have every right to do so, even if that required the party to bring a new motion. In that circumstance, the responding party would not bear the burden of preparing opposition unless the court indicated an interest in reconsideration." (*Schachter v. Citigroup, Inc., supra*, 126 Cal.App.4th at p. 739.)

Unless the requirements of section 437c, subdivision (f)(2), or 1008 are satisfied, any action to reconsider a prior interim order must formally begin with the court *on its own motion*. To be fair to the parties, if the court is seriously concerned that one of its prior interim rulings might have been erroneous, and thus that it might want to reconsider that ruling on its own motion—something we think will happen rather rarely—it should inform the parties of this concern, solicit briefing, and hold a hearing. (See *Abassi v. Welke, supra*, 118 Cal.App.4th at p. 1360 ["The trial court invited Welke to file a second summary judgment motion indicating it wanted to reassess its prior ruling . . . . The parties had an opportunity to brief the issue, and a hearing was held."]; *Schachter v. Citigroup, Inc., supra*, 126 Cal.App.4th at p. 739.) Then, and only then, would a party be expected to respond to another

party's suggestion that the court should reconsider a previous ruling. This procedure provides a reasonable balance between the conflicting goals of limiting repetitive litigation and permitting a court to correct its own erroneous interim orders.

### III. CONCLUSION

In this case, the individual defendants filed a new motion for summary judgment that did not satisfy the requirements of section 437c, subdivision (f)(2), which they were not permitted to do. The trial court erred in granting that motion. Plaintiffs argue that this circumstance means that we must order that the case go to trial. We disagree. We merely hold that the court erred in granting an impermissible motion. On remand, nothing prohibits the court from reconsidering its previous ruling on *its own motion*, a point on which we express no opinion.[6]

We reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.

George, C. J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—I agree with the majority's holding that Code of Civil Procedure sections 437c, subdivision (f)(2), and 1008 prohibit only a *party* from renewing a motion or moving for reconsideration without new facts or law, and that these provisions do not limit a court's ability to reconsider and correct error in a prior interim order. I also agree generally with the majority's analysis in support of that holding.

But I do not agree with the majority's disposition reversing the Court of Appeal's judgment, which in turn had affirmed the trial court's summary judgment. As the majority holds, a trial court may properly reconsider an earlier ruling denying summary judgment and make a new ruling granting summary judgment. Although the trial court here erred insofar as it purported to act on a party's motion rather than on its own motion, this procedural error does not affect the judgment's validity. A legally correct ruling will not be reversed on appeal merely because the trial court erred in its reasoning

---

[6] Justice Kennard argues that we should affirm the judgment on the basis of harmless error. However, defendants have made no such harmless error argument, and thus plaintiffs have had no chance to argue against it. Moreover, the trial court did not inform the parties that it might change its previous ruling on its own motion and give them an opportunity to be heard, as it should have done. We do not know what would have occurred if it had done so. Under the circumstances, we think it best to remand the matter for the court and parties to follow proper procedure.

(*People v. Smithey* (1999) 20 Cal.4th 936, 972 [86 Cal.Rptr.2d 243, 978 P.2d 1171]; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]), and a trial court's judgment may not be set aside for procedural error unless the error has resulted in a miscarriage of justice (Cal. Const., art. VI, § 13). Because no miscarriage of justice has been demonstrated here, I would affirm.